IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

VANCE HERNANDEZ-SMITH,

                      Plaintiff,

   v.                                                OPINION and ORDER

KEVIN A. CARR,                                     20-cv-1117-jdp

                      Defendant.

---

      Plaintiff Vance Hernandez-Smith, appearing pro se, is currently a prisoner at Green Bay Correctional Institution. Hernandez-Smith alleges that Wisconsin Department of Corrections staff barred him from possessing materials related to a group called the Nation of Gods and Earths (NGE), also known as the Five Percent Nation or the Five Percenters. I granted Hernandez-Smith leave to proceed on claims under the First and Fourteenth Amendments to the United States Constitution and the Religious Land Use and Institutionalized Persons Act (RLUIPA). Defendant DOC officials moved for summary judgment, contending that they appropriately banned the NGE materials because they considered NGE a "security threat group," DOC's term for a gang. I granted defendants' motion for summary judgment on Hernandez-Smith's constitutional claims but denied them summary judgment on Hernandez-Smith's RLUIPA claim for declaratory and injunctive relief because they failed to establish that their complete banning of NGE materials was the least restrictive means to further their interests in security and rehabilitation. Dkt. 61. I stayed the case to recruit counsel for Hernandez-Smith before a bench trial on his RLUIPA claim. *Id.*

Hernandez-Smith has filed a motion for reconsideration of portions of my summary judgment opinion and a motion to reopen discovery. Defendants[1] responded to the summary judgment opinion by stating that the DOC will no longer consider NGE a security threat group and suggesting that the case should therefore be dismissed as moot. I will deny Hernandez-Smith's motion for reconsideration. Defendants' mootness argument is correct regarding the various ways they have undone previous restrictions on NGE materials, but the parties' filings suggest that the DOC is nonetheless continuing to withhold some materials from Hernandez-Smith. I will have the parties respond to this order, explaining whether there is still a dispute over any materials that Hernandez-Smith's continues to consider part of his religious practice. I will grant Hernandez-Smith's motion to reopen discovery.

**A.  Hernandez-Smith's motion for reconsideration**

Hernandez-Smith has filed a motion for reconsideration of my ruling granting defendants' motion for summary judgment on his First Amendment free exercise claim under the doctrine of qualified immunity and my related ruling denying his motion for preliminary injunctive relief asking for specific NGE materials confiscated by DOC officials. Dkt. 62. Hernandez-Smith's motion was handwritten and he followed with what he calls an "amended" motion that is typed. Dkt. 67. The motions don't have material differences, so I'll deny Hernandez-Smith's amended motion as duplicative of his original motion.

---

[1] Following my grant of summary judgment to defendants on all of Hernandez-Smith's claims for monetary damages, I dismissed the existing defendants sued in their individual capacities and replaced them with DOC Secretary Kevin A. Carr as the defendant for Hernandez-Smith's RLUIPA claim. Because this the order addresses Hernandez-Smith's motion for reconsideration of my summary judgment decision, I will refer to plural "defendants" in this opinion.

Hernandez-Smith contends that I incorrectly concluded that defendants were entitled to qualified immunity for his free exercise claims about the blanket ban on NGE materials because it was clearly established that prison officials were required to perform individualized assessments of incoming materials rather than issue a blanket ban on items considered to be associated with NGE. Hernandez-Smith chiefly relied on *Thornburgh v. Abbott*, 490 U.S. 401, 414 (1989), in which the Supreme Court concluded that publications coming into prisons may be confiscated by prison officials after properly applying the reasonableness standard found in *Turner v. Safley*, 482 U.S. 78, 98 (1987). I stated, "Although the *Thornburgh* Court did state that 'we are comforted by the individualized nature of the determinations required by the regulation' at issue in that case, *id.* at 416, it did not explicitly bar blanket bans on materials from organizations considered security threats.'" Dkt. 61, at 9.

In his motion for reconsideration, Hernandez-Smith states that there is binding Seventh Circuit precedent supporting his argument that *Thornburgh* does not allow blanket bans on religious materials, citing *Kikumura v. Turner*, 28 F.3d 592 (7th Cir. 1994), a case in which the court ruled unconstitutional a prison's policy forbidding a prisoner from receiving mail in Japanese where prison staff made no effort to translate or screen the material first. I agree with defendants that the foreign-language-materials issue in *Kikumura* is not closely enough analogous to the issue here, about publications from a group already identified by prison staff as being a threat to security. The *Kikumura* court expressly noted that "our discussion is narrowly limited to the regime we are reviewing: where a prison makes no effort at all to accommodate the constitutional rights of prisoners native in languages other than English." 28 F.3d at 598. I don't read *Kikumura* as mandating individualized assessments of communications in all contexts.

3

He also cites *Shakur v. Selsky*, 391 F.3d 106, 114 (2d Cir. 2004), for its statement that the *Thornburgh* decision "permitted censorship of such materials where the censorship occurred via 'individualized' review." But *Shakur* is not controlling authority in this circuit, and as I stated in my summary judgment opinion, other courts have upheld bans on all NGE material, including the United States District Court for the Eastern District of Wisconsin, showing that the question of such blanket bans is not beyond debate. *Beamon v. Pollard*, No. 15-cv-560, 2017 WL 401218, at *9 (E.D. Wis. Jan. 30, 2017) ("All four *Turner* factors support a finding that the restriction on possessing NGE–related material is reasonably related to legitimate penological interests."), *aff'd*, 711 F. App'x 794 (7th Cir. 2018); *see also Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at *2 (6th Cir. May 5, 2010) ("[A] ban on written material related to [NGE] is reasonably related to the legitimate penological goal of preventing violence and maintaining security."); *Holley v. Johnson*, No. 08-cv-629, 2010 WL 2640328, at *4 (W.D. Va. June 30, 2010) (rejecting argument that prison officials should ban only NGE material that specifically advocates violence).

Hernandez-Smith also continues to argue that defendants shouldn't be entitled to qualified immunity because their actions violated the DOC's mail review rules, but I already rejected this argument, stating "[o]fficials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision." *Davis v. Scherer*, 468 U.S. 183, 194 (1984).

Hernandez-Smith filed a motion for leave to file a supplemental brief supporting his motion for reconsideration, Dkt. 76, after receiving defendants' response to my order asking them to support their contention that the case should be dismissed as moot now that the DOC will no longer consider NGE a security threat group, Dkt. 71. He has also submitted his

4

proposed supplemental brief, Dkt. 77. Hernandez-Smith contends that defendants' response reveals new evidence raising a new ground for reconsideration. Defendants state that "NGE's characterization as a security threat group was never exactly written into policy, so there is no policy to change." Dkt. 71, at 2. Hernandez-Smith responds as follows:

> Prior to this revelation, it was argued and assumed the defendants were acting pursuant to a "Policy" which was being Challenged as Unconstitutional.
>
> In response to Plaintiff's Motion for Reconsideration, Defendants sought to distinguish *Kikumura*, by arguing that "Banning all material of a certain language is different from banning all security threat group material. [F]or the security threat group material, *the determination has already been made based on its contents, poses a threat to the security of the institution.*"
>
> However, with the recent revelation Defendants were not action to any specific policy, it must be concluded that this was a "summary" decision made without any attempt to learn whether the contents posed a threat to the institution, or any of the other factors set for in *Turner* as there was never any "Determination already made."

Dkt. 77, at 1–2 (emphasis in original).

Hernandez-Smith argues that this makes this case more like *Kikumura* and thus qualified immunity should not apply to his free exercise claims. And he cites a Western District of Wisconsin case, *Koutnik v. Berge*, No. 03-C-345-C, 2004 WL 1629548 (W.D. Wis. July 19, 2004), for the proposition that "defendants must do more than assert generally that 'gangs are bad' without making any showing that their interest in stamping out gangs is implicated by particular inmate conduct." *Id.* at *7.

I will accept Hernandez-Smith's motion for leave to file a supplemental brief and I will consider his brief. But his new argument is not persuasive. Defendants' statement that "NGE's characterization as a security threat group was never exactly written into policy" does not mean

that the DOC's ban of NGE materials was made without regard to prison policy. Under Wis. Admin. Code § DOC 303.24 (group resistance and petitions), inmates are prohibited from "possess[ing] any written materials, symbols or symbolism related to a security threat group." And in their response, defendants followed their comment about the lack of a policy to be amended by explaining the specific measures they took to remove the ban on NGE materials:

- NGE/Five Percenters are no longer identified as a security threat group in Corrections' WICS database (Wisconsin Integrated Corrections System).

- Inmates previously identified as confirmed or suspected NGE/Five Percenters associate have had this notation removed from their WICS record.

- There is no longer a blanket ban on publications or materials on the basis of NGE/Five Percenters content.

- Staff should no longer refer inmates for possible investigation on the basis of association with NGE/Five Percenters.

- Staff should not issue conduct reports for items that would be otherwise allowable except for the fact that they are associated with NGE/Five Percenters.

Dkt. 71, at 2.

I take defendants to be saying that there is not a separate formal "policy" listing the groups that the DOC has determined are security threat groups, such that the policy would need to be amended to remove NGE. None of this information affects my reasoning in the summary judgment order or my discussion above regarding *Kikumura.* Banning content perceived to be coming from a gang is qualitatively different than banning all foreign language materials without attempting to accommodate foreign-language-speaking inmates.

*Koutnik* does not help Hernandez-Smith either. That case was about prison staff disciplining a prisoner who signed outgoing correspondence with what they believed was a gang

6

nickname. The court granted summary judgment to plaintiff on a (non-religion-based) First Amendment claim because the government failed to show that it was "generally necessary" for prison staff to censor a prisoner's outgoing correspondence, using a test outlined in *Procunier v. Martinez*, 416 U.S. 396, 413–14 (1974). The *Procunier* test is more difficult for prisons to meet than *Turner*, because outgoing correspondence poses a less significant security threat to the prison. Hernandez-Smith's case involves incoming publications, not outgoing materials like in *Koutnik*. The court acknowledged in *Koutnik* that "[i]f defendants were censoring plaintiff's use of a possible gang nickname *in the prison*, they would have a very strong argument that doing so would be necessary to protect prison security." *Id.* at *7 (emphasis in original). That case isn't a reason to reconsider my qualified immunity ruling about how defendants treated incoming NGE materials.

Whether the DOC's ban of incoming NGE materials would actually pass muster under the *Turner* factors given the record before me is a close call, but the lack of clearly established law in Hernandez-Smith's favor entitles defendants to qualified immunity. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (To avoid qualified immunity, "existing precedent must have placed the statutory or constitutional question beyond debate."). Hernandez-Smith's motion for reconsideration does not persuade me that my previous decision was incorrect, so I will deny his motion.

B.  **Mootness of lawsuit**

I turn to defendants' request to dismiss as moot Hernandez-Smith's remaining claims for declaratory and injunctive relief under RLUIPA. They've explained that NGE will no longer be considered a security threat group, the blanket ban on NGE materials has been ended, and

that they've removed NGE-membership notations from 87 DOC prisoners (although Hernandez-Smith apparently was not assigned that notation at any point).

As a general rule, "a defendant's voluntary cessation of challenged conduct will not render a case moot because the defendant remains free to return to his old ways." *Speech First, Inc. v. Killeen*, 968 F.3d 628, 645 (7th Cir. 2020), *as amended on denial of reh'g and reh'g en banc* (Sept. 4, 2020) (internal quotations omitted). But as defendants point out, "when the defendants are public officials . . . [courts] place greater stock in their acts of self-correction, so long as they appear genuine." *Id.* (internal quotations omitted); *see also Fed'n of Advert. Indus. Representatives, Inc. v. City of Chicago*, 326 F.3d 924, 930 (7th Cir. 2003) ("we have repeatedly held that the complete repeal of a challenged law renders a case moot, unless there is evidence creating a reasonable expectation that the City will reenact the ordinance or one substantially similar."); *Freedom from Religion Found., Inc. v. Concord Comty. Schs.*, 885 F.3d 1038, 1051 (7th Cir. 2018) ("A defendant's voluntary cessation of challenged conduct does not necessarily render a case moot. But if a government actor sincerely self-corrects the practice at issue, a court will give this effort weight in its mootness determination." (citation omitted))

Defendants state that defendant Secretary Kevin A. Carr "approved and implemented exceptional changes" following my summary judgment opinion. Hernandez-Smith does not oppose this argument or otherwise suggest that the DOC can't be trusted to keep NGE off its list of gangs. I conclude that the DOC has genuinely changed its policies toward NGE adherents; I won't keep the case open to litigate issues that have been resolved by the DOC's changes.

But Hernandez-Smith contends that parts of his claims are not moot. He argues that he is still entitled to a declaratory judgment that defendants' past actions violated his rights

under the First Amendment and RLUIPA. Hernandez-Smith is incorrect. "A court loses jurisdiction when a party's claim becomes moot, or in other words, when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *E.F.L. v. Prim*, 986 F.3d 959, 962 (7th Cir. 2021) (internal quotations omitted). Hernandez-Smith is not entitled to declaratory relief on problems now fixed by the DOC. *See Feit v. Ward*, 886 F.2d 848, 857 & n.11 (7th Cir. 1989) ("claims for declaratory relief, like claims for injunctive relief, require ongoing or impending harm").

Hernandez-Smith also argues that defendants have not provided him with all of the documents he was barred from possessing. In their brief opposing Hernandez-Smith's motion for reconsideration, defendants stated that after they removed NGE from the list of security threat groups they gave Hernandez-Smith all of the documents that had they had previously denied him, while noting that "Plaintiff seems to believe there are 275 pages of documents at issue. Defendants are only aware of 77 pages." Dkt. 70, at 3 n.2. But defendants later copied the court on a letter counsel sent to Hernandez-Smith stating that prison staff recovered 100 additional pages of documents and that they gave Hernandez-Smith 98 of those pages. Dkt. 78. They continued to withhold two pages of a document called "The Speech" by Willie Lynch, stating the following:

> The DAI Security Chief states that these two pages have historically been denied because they could affect the climate of the institution and can be used to rally groups of inmates to resist the authority of staff. In addition, the denied material does not appear to be related to Five Percenter / NGE teachings.

*Id.*

So it appears that Hernandez-Smith's claim for declaratory and injunctive relief are not yet entirely moot. But it's unclear exactly what materials the parties are genuinely fighting over

at this point. It makes little sense to continue with the course I had previously set following my summary judgment opinion: at present it is not clear that a bench trial or recruitment of counsel is necessary. I will lift the stay of these proceedings and direct Hernandez-Smith to respond to this order, explaining in specific detail what documents he believes that the DOC is still withholding from him, and explaining whether each of them is related to the practice of his religion. I will give defendants an opportunity to respond to Hernandez-Smith's submission; when they do so they must submit "The Speech" to this court for *in camera* review, along with any other document they possess that Hernandez-Smith discusses in his response. The parties' submissions do not need to include formal proposed findings of fact, but the parties should file declarations or affidavits explaining the denial of any materials, along with supporting evidence.

Hernandez-Smith has also filed a motion to reopen discovery, Dkt. 69, which I will grant now that I am lifting the stay. Hernandez-Smith should quickly serve any discovery requests about currently disputed documents so that he can file a timely response to this order.

ORDER

IT IS ORDERED that:

1. Plaintiff Vance Hernandez-Smith's motion for leave to file a supplemental brief supporting his motion for reconsideration of the court's summary judgment opinion, Dkt. 76, is GRANTED.

2. Plaintiff's motion for reconsideration, Dkt. 62, is DENIED.

3. Plaintiff's amended motion for reconsideration, Dkt. 67, is DENIED as duplicative.

4. Defendants' motion to dismiss plaintiff's RLUIPA claim as moot, Dkt. 71, is GRANTED in part.

5. Plaintiff may have until June 1, 2023, to respond to this order explaining whether defendants are continuing to bar him from possessing NGE materials and detailing

what materials he is being denied. Defendants may have until June 15, 2023, to file a response.

6. The stay of proceedings is LIFTED.

7. Plaintiff's motion to reopen discovery, Dkt. 69, is GRANTED.

Entered May 1, 2023.

                              BY THE COURT:

                              /s/

                              _____
                              JAMES D. PETERSON
                              District Judge